JOHN SUTHERLAND, Appellant, *v.* THE CITY OF BROOKLYN,
Impleaded with Others, Respondent.

CITY OF BROOKLYN — TAX SALE SURPLUS — RIGHTS OF MORTGAGE
LIENOR.   Under the provisions of chapter 583 of the Laws of 1888, revis-
ing the charter of the city of Brooklyn, when, on a sale of land for arrears
of taxes, the city had received a sum in excess of the taxes, a mortgagee
in possession, holding an unpaid past due mortgage for more than the sur-
plus and constituting a first lien of record upon the land, was not bound
to redeem in order to obtain the surplus, but he might elect to adopt the
sale and then be entitled, after the purchaser's right to a deed had become

fixed so far as he was concerned, to the surplus in the hands of the city, or which it had parted with without authority, even though there was a possibility of redemption by the owner of the land and the purchaser had not taken his deed.

*Sutherland* v. *City of Brooklyn*, 87 Hun, 82, reversed.

(Argued June 10, 1898; decided October 4, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the second judicial department, entered June 4, 1895, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John A. Taylor* for appellant. After the compulsory taking of the land the city stood in no different relation to those whose title or lien it had divested than any other trustee to its *cestui que trust.* (L. 1888, ch. 583, tit. 8, § 5.)

*Almet F. Jenks* for respondent. When the realty was sold for arrears the purchaser was not thereby vested with any legal title to the premises. (Blackw. on Tax Titles [2d ed.], § 322; *Terrel* v. *Wheeler*, 123 N. Y. 76–84; *O'Donnell* v. *McIntyre*, 118 N. Y. 156.)

HAIGHT, J. This action was brought to recover the surplus moneys arising from a sale of a lot of land in the city of Brooklyn.

On the 11th day of April, 1876, Eliza Richardson was the owner of the lot in question, and on that day executed a mortgage with her husband to the plaintiff to secure the payment of the sum of $4,200. Both Eliza Richardson and her husband have since died, leaving children who were their heirs at law and who are made parties to this action and appear by guardians. No part of the money secured by the mortgage has ever been paid to the plaintiff, and for some years he has been in possession of the premises. On the 11th day of July, 1888, the defendant, the city of Brooklyn, sold the lot

pursuant to law for unpaid taxes, which had previously been levied and assessed thereon, and received from the purchaser the sum of $3,500, which was in excess of the taxes imposed in the sum of $3,407.57, which sum was thenceforth held by the city for disposition and payment to such person or persons as shall be entitled thereto.   Thereafter the purchaser, or his assignee, caused notice to be served upon the plaintiff, as such mortgagee, of such sale and purchase, that he must redeem before the expiration of one year. Under such notice plaintiff's time to redeem from such sale expired on the 2d day of November, 1889.   After the notice of such sale had been served upon him, and on or before the 2d day of November, 1889, and after such date, he demanded from the defendant, the city of Brooklyn, that the surplus be paid over to him, and at the time exhibited to the proper officers of the city his muniments of title thereto as such mortgagee, whose estate and lien appeared of record in the county of Kings, but payment thereof was refused.   It appears from the evidence in the case that after, or about the time that the plaintiff first demanded the payment to him of the surplus, one Tormey appeared at the office of the comptroller and redeemed the premises from the sale, and that thereupon the surplus was paid over to the purchaser or his assignee.   It does not appear whether Tormey was acting for himself or for the purchaser, but it does appear that he was not the owner or a mortgagee, or a person having any interest in the premises which entitled him to redeem under the statute.

The statute under which the sale took place is chapter 583 of the Laws of 1888, title eight.   The scheme provided for the collection of arrears of taxes is, in substance, a sale by the registrar of arrears of the lands upon which the taxes were assessed at public auction to the highest bidder, but for a sum not less than the aggregate amount of all arrears of taxes unpaid, with the interest accrued thereon.   Upon such sale and the payment by the purchaser into the treasury of the amount bid the registrar delivers to him a certificate of such sale containing a covenant on the part of the city to refund

the amount paid for the lands, with interest at the rate of four per centum per annum from the date of sale and all sums paid by him for taxes, assessments and water rates authorized by the statute in case the title shall prove invalid, and that upon presentation of the certificate of sale and the service of a notice thereof upon the owner and upon mortgagees of the lands the registrar, after the expiration of one year from the date of the service of such notice, in case the lands have not been redeemed, shall execute and deliver to the purchaser, his legal representatives or assigns, a deed of the premises, who shall take a good and sufficient title in fee simple absolute in the property. The statute further provides that " Any person or persons having an estate in or any mortgagee of any of the lands and premises sold in pursuance of the third section of this title, whose estate, or lien appears of record in the County of Kings, may, at any time before the expiration of one year after notice shall have been given to him of such sale, by the purchaser or his assigns in the manner hereinafter provided, or before a deed of said premises shall have been delivered as provided in section four of this title, redeem said lands and premises by paying to the registrar of arrears for the use of the purchaser or his assigns the sum paid by him on such sale, and ten per centum on the same, with interest on the aggregate amount at the rate of fifteen per centum per annum from the date of said sale, and one dollar for each notice (not exceeding six) served as hereinafter provided, together with all sums which shall have been paid by such purchaser or his assigns for taxes, assessments or water rates on said lands, levied, imposed or becoming due after the tax, assessment or water rate for which the sale was made, with interest thereon, from the date of such payment, respectively, at the rate of nine per centum per annum. * * * Any person redeeming any lands from a sale under the provisions of this title, shall, at the request of the person so redeeming, be allowed and credited by the registrar of arrears, toward such redemption, with the amount of surplus moneys received on such sale *then remain*

*ing in the hands of the treasurer*, and upon his presenting to the said registrar a certificate from the comptroller showing the amount of such surplus, such amount shall be applied upon or toward such redemption." The statute further provides that "Whenever such registrar shall receive satisfactory information that the land so sold belongs to an idiot or insane person, for whose estate no committee shall have been appointed, or to an infant having no guardian, he shall not execute a conveyance of their land until at least one month after he shall have legal evidence that such disability has been removed, or a committee or guardian of the estate has been appointed. And until the expiration of said month, such committee or guardian, may redeem such land in the same manner as hereinbefore provided."

It will be observed that the provisions of this act are somewhat extraordinary. The redemption provided for is made exceedingly burdensome, for it can only be made by paying ten per centum on the amount of the bid and fifteen per centum interest, which at the end of the first year amounts to twenty-five per centum, and an additional fifteen per centum for every year thereafter. It is an inducement, therefore, for purchasers at tax sales to bid a large sum and thus increase the amount to be returned to them upon redemption. The owner or mortgagee, however, is not bound to redeem. He may elect to adopt the sale and accept the surplus over and above the taxes paid by the purchaser into the treasury. This is what the plaintiff did in this case. He was the first lienor of record, holding a mortgage unpaid, upon which more than the amount of the surplus was due and owing, and his right thereto was established by the judgment in this action, in which the owners were parties, and about which there is no controversy. He was met, however, with a refusal on the part of the city to pay the surplus to him for the reason that another person had redeemed the premises and the surplus had been returned to the purchaser. It was, however, conceded upon the argument by the counsel representing the city that Tormey, the redeemer, was not an owner or a lienor, or a person entitled to redeem

77

under the statute, and that such redemption must be treated as unauthorized. He claims, however, that up to the time that the purchaser could legally take his deed and until the deed was delivered, the purchaser had no title to the premises, but the title and possession were with the owner, and that the lien of the mortgage had not been disturbed; that the plaintiff could not claim payment of the surplus for the reason that it must be retained by the city so long as redemption was possible. It appears that this view was adopted by the court below, Mr. Justice CULLEN saying in his opinion: "The sale has not yet become absolute, and may never become such." We do not see our way clear to the adoption of this view. It is true that the owners are infants, and if they had no guardians they yet may have the right to redeem, but the plaintiff as first lienor, whose lien is past due, is entitled to the surplus. As to him, the year had run after the service of the notice upon him before the last demand was made, and as to him the purchaser was entitled to a deed absolutely cutting off and discharging the lien of his mortgage upon the premises. The fact that the purchaser neglected to apply for his deed does not, as it appears to us, affect the rights of the plaintiff. To hold otherwise would permit the purchaser, at his option, to tie up the surplus for an indefinite number of years, thus preventing the mortgagee from having any use of the money which clearly belonged to him. Nor does the fact that the owners are infants appear to affect the plaintiff's rights. It is true that the statute provides that persons redeeming may be credited by the registrar with the amount of surplus moneys received on such sale *then remaining in the hands of the treasurer*, but a former provision provided for the redemption upon the payment of the sum paid by the purchaser on the sale and ten per centum on the sum, with interest on the aggregate amount at the rate of fifteen per centum. These two provisions must be read and construed together, and when so read and considered, there can be no doubt as to the meaning. A person entitled to redeem must pay the amount of the purchase money, with the ten per centum in

addition and the fifteen per centum interest. In making such payment, he must be credited with the amount of the surplus received upon the sale, if any such surplus then remains in the hands of the treasurer. If none so remains, he cannot be credited with it. This construction brings the provisions of the statute in harmony and sustains the plan of redemption evidently intended. It often occurs, as it has in this case, that redemption may be made by more than one person, but such is not the case with the distribution of surplus moneys unless the amount is more than sufficient to pay the first lienor. If the owners should hereafter redeem, they would have to pay the amount of the mortgage, for it is past due. If the surplus now remaining in the treasury of the city is applied upon the mortgage, the owners do not suffer thereby, for they still can redeem upon payment of the amounts specified by the statute. They would be entitled to no credit, for there would be no surplus in the treasury, it having been applied in discharging their obligation upon the mortgage. Neither is the purchaser prejudiced or deprived of any of his rights under the statute by thus applying the surplus funds paid into the treasury by him. If no redemption takes place, he is entitled to his deed. If redemption is finally made by the owners, he gets his twenty-five per centum for the first year and fifteen per centum interest annually thereafter, together with the full amount of his bid. .

The judgment of the General Term should be reversed, and that of the Special Term affirmed, with costs.

O'BRIEN, MARTIN and VANN, JJ., concur; PARKER, Ch. J., GRAY and BARTLETT, JJ., dissent.

Judgment reversed, etc.